Argued and submitted July 22, 2009, reversed and remanded September 29, 2010

In the Matter of the Compensation of
Karl J. Wild, Deceased, Claimant.

SAIF CORPORATION
and Oregon Military Department,
*Petitioners,*

*v.*

Jeanette C. WILD,
on behalf of Simone Wild,
beneficiary of Karl J. Wild, Deceased,
*Respondent.*

Workers' Compensation Board
0606848; A137352

240 P3d 1103

Julene Quinn argued the cause for petitioners. On the brief was Jerome P. Larkin, Special Assistant Attorney General.

Edward J. Hill argued the cause and filed the brief for respondent.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

ARMSTRONG, J.

* Brewer, C. J., *vice* Edmonds, P. J.

## ARMSTRONG, J.

Karl Wild filed a claim for workers' compensation benefits, which SAIF Corporation processed for Wild's employer, the Oregon Military Department. Wild subsequently obtained counsel and challenged aspects of the administration and review of his claim; however, Wild died during the claim process. After Wild's death, SAIF accepted part of Wild's claim and issued a notice of closure. The attorney who had represented Wild then sought reconsideration by the Workers' Compensation Division (WCD) of the notice of closure, which ultimately resulted in an order awarding Wild additional temporary disability benefits. Petitioners, SAIF Corporation and the Oregon Military Department, requested a hearing on the award, which led to an order by an administrative law judge (ALJ) that vacated the award on the ground that Wild's minor daughter, as Wild's beneficiary under the Workers' Compensation Law, was the person who had to have timely requested reconsideration. Because, according to the ALJ, Wild's daughter had not done that, the WCD had lacked authority to reconsider the notice of closure. Wild's daughter then appealed the ALJ's order to the Workers' Compensation Board.

The board concluded on appeal that the reconsideration request that the attorney had submitted was a request made on behalf of Wild's daughter. The board further concluded that, even if Wild's daughter had not submitted a timely reconsideration request, the notice of closure was procedurally invalid under OAR 436-060-0017(7)(d) (Jan 1, 2006)[1] because the notice had not been mailed to the recipients specified in the rule.

On judicial review, petitioners assign error to both of the board's rulings. Petitioners contend that, (1) although the attorney who had represented Wild filed a reconsideration request before the statutory deadline, he did not have authority to do that on behalf of Wild's daughter and, thus, Wild's daughter did not timely request reconsideration of the notice of closure, and (2) SAIF did not violate the mailing provisions in OAR 436-060-0017(7)(d) in issuing the notice of closure.

---

[1] All references to the Oregon Administrative Rules are to the 2006 version.

We conclude that the board erred with respect to both issues and, accordingly, reverse and remand.

We relate the following undisputed facts that are material to our review. In May 2005, Wild filed a workers' compensation claim for an occupational disease involving his neck and left arm. SAIF denied the claim in August 2005. That same month, Wild signed a retainer agreement with counsel and requested a hearing on the denial. After hearing, an ALJ issued a January 2006 order affirming SAIF's denial, and Wild appealed that order to the board. Wild died thereafter on April 16, 2006.

In July 2006, the board affirmed the ALJ's order in part and reversed it in part, setting aside the denial of the left arm condition and remanding the claim to SAIF for further processing. On August 1, 2006, SAIF issued a notice of acceptance of left elbow lateral epicondylitis and mailed it to Wild's home address. That notice was returned to SAIF with a notation that Wild had died. Additionally, in early August 2006, SAIF received notice from Wild's attending physician of Wild's death.

SAIF closed the claim on August 16, 2006, and mailed copies of the notice of closure to Wild's "estate" at his former address and to the attorney who had represented Wild on the claim. The notice of closure explained that it could be appealed by requesting reconsideration within 60 days from the mailing date of the notice. Two days later, the attorney who had represented Wild requested reconsideration of the notice of closure. On September 6, 2006, the WCD Appellate Review Unit (ARU) issued an order on reconsideration affirming the notice of closure. Thereafter, the attorney asked the ARU to abate its order to consider additional information from Wild's attending physician. SAIF objected to the admission of the additional evidence but did not question whether the attorney had authority to pursue reconsideration. The ARU granted the request and subsequently issued an amended order on reconsideration on October 11, 2006, awarding temporary disability benefits for the period from July 2005 to January 2006.

On October 26, 2006, SAIF challenged the validity of the reconsideration request, asserting that the attorney had

not had authority to request reconsideration because Wild had died before the attorney requested reconsideration and there was no indication that the attorney represented anyone who was entitled under the Workers' Compensation Law to receive Wild's workers' compensation benefits on his death. The ARU declined to abate its order, and SAIF then requested a hearing. On the date of the hearing, December 29, 2006, the attorney executed a retainer agreement with the mother of Wild's minor daughter authorizing the attorney to represent Wild's daughter regarding her rights as the statutory beneficiary on Wild's claim.

The ALJ issued an order vacating the amended order on reconsideration on the ground that the attorney had lacked authority to request reconsideration because he had not been retained to represent Wild's daughter until after the 60-day period to request reconsideration had expired. *See* ORS 656.268(5)(c) (2005).[2] Wild's daughter appealed the ALJ's order to the board.

On appeal, the board reversed the ALJ's order. It concluded that Wild's daughter, as the statutory beneficiary, had "timely pursued an appeal of the Notice of Closure." The board reasoned "that counsel was representing the interests of [Wild's daughter] when filing the reconsideration request regarding the Notice of Closure." The board explained that neither party had cited, nor had it found, "a WCD rule that requires an executed retainer agreement before an attorney may file a valid reconsideration request." Additionally, the board noted that "[t]he statutory scheme entitles a 'beneficiary' to pursue a Notice of Closure in the place of a deceased worker." In light of those considerations, the board concluded that "counsel's August 2006 request for reconsideration was filed on behalf of [Wild's daughter] (the deceased worker's statutory beneficiary) and, as such, was valid."

We begin our analysis by addressing petitioners' assignment of error to that ruling, which we review for legal error. ORS 656.298(7); ORS 183.482(8)(a); *SAIF v. Johnson*, 198 Or App 504, 508-09, 108 P3d 662 (2005).

---

[2] All subsequent references to ORS 656.268 are to the 2005 version.

In the event that a worker dies before receiving disability compensation to which the worker is entitled, ORS 656.218 (2005), in conjunction with ORS 656.204 (2005), provides that the deceased worker's statutory beneficiaries are entitled to the compensation.[3] Thus, Wild's minor daughter, as Wild's sole statutory beneficiary, was entitled to the disability compensation benefits that would have gone to her father had he not died. Furthermore, she was authorized to pursue the compensation due her father by requesting a hearing on the notice of closure and, as a predicate to that, requesting reconsideration. *Edwards v. Cherry City Electric, Inc.*, 141 Or App 578, 582, 919 P2d 501 (1996). However, she was required to request reconsideration "within 60 days of the date of the notice of closure." ORS 656.268(5)(c).

■ The board concluded, in essence, that, because Wild's daughter was the person who was statutorily entitled to pursue her father's right to compensation, the attorney's request for reconsideration was, necessarily, made on her behalf and was therefore valid. The board's reasoning fundamentally falters, however, because ORS 656.218 (2005) and ORS 656.204 (2005) merely *entitled* the daughter to pursue her father's right to compensation. Contrary to the

---

[3] The provisions of ORS 656.218 (2005) relevant to this case state:

"(1) In case of the death of a worker entitled to compensation, whether eligibility therefor or the amount thereof have been determined, payments shall be made for the period during which the worker, if surviving, would have been entitled thereto.

"* * * * *

"(4) If the worker dies before filing a request for hearing, the persons described in subsection (5) of this section shall be entitled to file a request for hearing and to pursue the matter to final determination as to all issues presented by the request for hearing.

"(5) The payments provided in this section shall be made to the persons who would have been entitled to receive death benefits if the injury causing the disability had been fatal. * * *."

ORS 656.204(4)(a) (2005) provides, in turn, that

"[i]f death results from the accidental injury, payments shall be made as follows:

"* * * * *

"(4)(a) If the worker leaves neither wife nor husband, but a child under 18 years of age, a monthly benefit equal to 4.35 times 25 percent of the average weekly wage shall be paid to each such child until the child becomes 18 years of age."

board's conclusion, those statutes do not obviate the need for the statutory beneficiary to request reconsideration within the 60-day period, regardless of whether the request is made personally or through an attorney.

The parties' dispute ultimately reduces to whether the attorney submitted the reconsideration request on behalf of Wild's daughter. On August 18, 2006, the attorney requested reconsideration of the notice of closure. He did that by submitting to the WCD a form entitled "Worker Request for Reconsideration," which he signed on a line labeled "requestor or designee." The cover letter that the attorney submitted with the form said that he "represent[s] Karl Wild regarding his claim for workers' compensation benefits" and identified the claimant as Karl Wild. There is no reference in either document to Wild's daughter. Furthermore, nothing else in the record indicates that, at the time that he submitted the reconsideration request, the attorney was acting for Wild's daughter. Finally, according to the record, the attorney did not execute a retainer agreement authorizing him to represent the interests of Wild's daughter until December 2006, more than two months after the time to request reconsideration had expired.

At bottom, and in light of the facts in the record, the board's order does not explain how the daughter's *entitlement* to pursue an appeal made the reconsideration request that the attorney submitted—a request by an attorney who identified himself as Wild's attorney and Wild as the claimant—a request by the daughter. Accordingly, we conclude that the board erred in concluding that Wild's daughter had timely submitted a reconsideration request.[4]

We turn to petitioners' second assignment of error, in which they challenge the alternate basis on which the board relied to reverse the ALJ's order. Specifically, petitioners assign error to the board's conclusion that SAIF's "mailing of the Notice of Closure to [Wild's] 'estate' does not satisfy the mailing requirements of OAR 436-060-0017(7)(d)."

---

[4] The parties do not dispute that the attorney lost the authority to act on Wild's behalf when Wild died. *See, e.g.*, *Hamilton v. Hughey*, 284 Or 739, 743, 588 P2d 38 (1978). Hence, the attorney's reconsideration request was not a timely request *by Wild* that Wild's daughter could pursue to its conclusion.

According to the board, OAR 436-060-0017(7)(d) required SAIF to mail the notice of closure to the last known address of the claimant, claimant's beneficiary, or claimant's attorney. Relying on that rule, the board reasoned:

> "A 'claimant' is a 'party' to a claim. ORS 656.005(21). Here, the deceased worker died on April 16, 2006. Thus, when SAIF mailed the August 16, 2006, Notice of Closure to the decedent's 'estate,' the deceased worker was no longer a 'party.' Instead, by the time of the Notice of Closure, 'claimant' was the deceased worker's beneficiary, *i.e.*, his surviving minor child. Therefore, the Notice of Closure would only be valid under the applicable rules if it was mailed to either 'claimant' (the decedent's minor child, his sole statutory beneficiary) or to 'claimant's attorney.' "

Hence, according to the board, because the notice of closure was not mailed to Wild or his daughter, "the only viable route for establishing the validity of the Notice of Closure is that a copy of the notice was mailed to 'claimant's attorney.' " That led the board to reason that "the only legally supportable way to establish the validity of the Notice of Closure's issuance would be to conclude that the notice was mailed to counsel as the attorney for the statutory 'beneficiary,' *i.e.*[,] the decedent's minor child." Consequently, the board concluded that, "[i]n the absence of a properly mailed copy of the Notice of Closure to 'claimant's attorney,' the notice would be procedurally invalid[,] * * * thereby necessitating the issuance of a corrected Notice of Closure that would be mailed to [Wild's daughter] (as decedent's sole statutory beneficiary) and her attorney."

The board reasoned, in other words, that, if the attorney did *not* represent the daughter when he filed the reconsideration request, that is, if the board had erred in concluding that the attorney had filed a timely reconsideration request for the daughter, then the attorney was *not* the daughter's attorney when he received the notice of closure. Hence, the notice of closure would not have been mailed to any of the people specified in OAR 436-060-0017.

The parties' dispute about the board's alternate analysis turns on the function of OAR 436-060-0017, the

WCD's rule on "Release of a Claim Document." That rule provides, in relevant part:

"(1) For the purpose of this rule:

"(a) 'Documents' include, but are not limited to, medical records, vocational records, written and automated payment ledgers for both time loss and medical services, payroll records, recorded statements, insurer generated records (insurer generated records exclude a claim examiner's generated file notes, such as documentation or justification concerning setting or adjusting reserves, claims management strategy, or any privileged communications), all forms required to be filed with the director, *notices of closure*, electronic transmissions, and correspondence between the insurer, service providers, claimant, the division and/or the Workers' Compensation Board.

"* * * * *

"(3) A *request* for copies of claim documents must be submitted to the insurer, self-insured employer, or their respective third party administrator, and copied simultaneously to defense counsel, if known.

"(4) *The insurer must furnish*, without cost, legible copies of documents in its possession relating to a claim, *upon request of the claimant, claimant's attorney or claimant's beneficiary, at times other than those provided for under ORS 656.268 and OAR chapter 438, as provided in this rule*. Except as provided in OAR 436-060-0180, an initial request by anyone other than the claimant or claimant's beneficiary must be accompanied by a worker signed attorney retention agreement or a medical release signed by the worker. * * *.

"* * * * *

"(7) *The insurer must furnish copies of documents within the following time frames*:

"(a) The documents of open and closed files, and/or microfilmed files *must be mailed* within 14 days of receipt of a request, and copies of documents of archived files within 30 days of receipt of a *request*.

"(b) If a claim is lost or has been destroyed, the insurer must so notify the requester in writing within 14 days of receiving the request for claim documents. The insurer

must reconstruct and mail the file within 30 days from the date of the lost or destroyed file notice.

"(c)   If no documents are in the insurer's possession at the time the request is received, the 14 days within which to provide copies of documents starts when the insurer does receive some documentation on the claim if that occurs within 90 days of receipt of the *request*.

"(d)   *Documents are deemed mailed when addressed to the last known address of the claimant, claimant's beneficiary or claimant's attorney and deposited in the U.S. Mail.*

"(8)   *The documents must be mailed directly to the claimant's or beneficiary's attorney, when the claimant or beneficiary is represented.* If the documents have been requested by the claimant or beneficiary, the insurer must inform the claimant or beneficiary of the mailing of the documents to the attorney. The insurer is not required to furnish copies to both the claimant or beneficiary and the attorney. However, if a claimant or beneficiary changes attorneys, the insurer must furnish the new attorney copies upon request."

(Emphasis added.)

Here, our task in interpreting OAR 436-060-0017 is to determine the intent of the WCD director, who adopted the rule. *Perlenfein and Perlenfein*, 316 Or 16, 20, 848 P2d 604 (1993). Because OAR 436-060-0017 was adopted by the director, the board's interpretation of the rule is not entitled to deference. *SAIF v. Donahue-Birran*, 195 Or App 173, 181, 96 P3d 1282 (2004). As the following discussion explains, the board's application of OAR 436-060-0017(7)(d) ultimately founders because the board has not adequately explained why the rule's mailing requirements apply in this case and, also, why failure to comply with them would invalidate the notice of closure.

As the text of OAR 436-060-0017 indicates, the rule governs the release of claim documents, including notices of closure that are *requested* from insurers. *See* OAR 436-060-0017(3), (4). Specifically, the rule requires an insurer to furnish copies of claim documents "*upon request* of the claimant, claimant's attorney or claimant's beneficiary, *at times other than those provided for under ORS 656.268* and OAR chapter

438, as provided in this rule." OAR 436-060-0017(4) (emphasis added). In turn, subsection (7) of the rule requires the insurer to mail copies of documents within a specified number of days of receipt of such a request "to the last known address of the claimant, claimant's beneficiary or claimant's attorney." OAR 436-060-0017(7)(d).

The board does not identify in its order the document request that makes the requirements of OAR 436-060-0017 applicable in this case or by whom it was made. Nonetheless, in the cover letter attached to the attorney's reconsideration request, the attorney said, "By copy of this letter to SAIF Corp, claimant requests copies of all documents used to close this claim." Thus, the attorney made a request for claim documents. We have found no other document request in the record. The request was made by an attorney who identified himself as Wild's attorney, notwithstanding that Wild had died roughly four months earlier, and who identified Wild as the claimant. In light of that information, the board's assertion that, for purposes of compliance with the rule, the claimant was the daughter and, therefore, the documents had to be sent to the daughter's attorney, cannot be squared with the facts in the record. Hence, on this record, we disagree with the proposition that the rule required SAIF to mail the notice of closure to the daughter's attorney, with notice to the daughter, rather than to the attorney who had made the request, with notice to the claimant identified in the request, Wild.

We disagree with the board for the further reason that it has not identified a source of law or principle that supports its conclusion that Wild's daughter automatically became a party to Wild's workers' compensation claim when Wild died. Generally, people become parties to claims or cases by taking some action, for example, by filing a claim, pleading, motion, or other document. The daughter could have become a party to Wild's claim and perhaps, as a consequence, a claimant, by doing or submitting something regarding the claim, but we are not persuaded that she became a party simply because, and when, her father died.

Finally, even if the board were correct that SAIF violated OAR 436-060-0017(7)(d) by failing to mail the notice of

closure to the daughter or her attorney, the board has not adequately explained why the provisions of OAR 436-060-0017—which address the release of claim documents in response to document requests—should control whether a notice of closure was validly issued, as opposed to the provisions in ORS 656.268 and other WCD rules that specifically identify to whom insurers must provide notice of closure.

ORS 656.268(5)(a) provides that "[t]he insurer or self-insured employer shall issue a notice of closure of * * * a claim to the worker, to the worker's attorney if the worker is represented, and to the director." In addition, OAR 436-030-0020(8), "Requirements for Claim Closure," specifies that

> "[a] copy of the Notice of Closure must be mailed to each of the following persons at the same time, with each copy clearly identifying the intended recipient:
>
> "(a)  The worker;
>
> "(b)  The employer;
>
> "(c)  The director; and
>
> "(d)  The worker's attorney, if the worker is represented."

Thus, the rule requires that, in addition to issuing a notice of closure to the individuals specified in ORS 656.268(5)(a), the insurer must mail the notice to the worker's employer.

The notification requirement in OAR 436-030-0020(8) is also reflected in the WCD rule on "Insurer Responsibility," which provides that, "[w]hen an insurer issues a Notice of Closure * * *, the insurer is responsible for * * * [p]roviding the director, the parties, and the worker's attorney if the worker is represented, a copy of the Notice of Closure" and other associated notifications. OAR 436-030-0015(1)(a). By specifying that the insurer is responsible for providing the parties with a copy of the notice of closure, OAR 436-030-0015(1)(a) harmonizes with the requirement in OAR 436-030-0020(8) that both the worker and the employer (that is, the "parties") receive the notice.

Framed within that context, the requirement in OAR 436-060-0017(7)(d) for mailing copies of claim documents in response to document requests does not appear to bear on whether a notice of closure has been properly issued.

Rather, the requirements for issuance of a notice of closure are set out in other statutes and rules, as discussed. In light of those considerations, we are not persuaded that, if SAIF violated OAR 436-060-0017(7)(d) by failing to mail the notice of closure to the daughter or her attorney, that failure would invalidate the notice of closure.

Furthermore, and contrary to the daughter's assertion, our review of the relevant statutes and rules has not identified any provision that requires an insurer to identify a deceased worker's statutory beneficiaries and provide them with a copy of the notice of closure.[5] The provisions specific to an insurer's issuance of a notice of closure, on their face, require only that the insurer mail the notice to the worker, the worker's attorney, the employer, and the WCD director. ORS 656.268(5)(a); OAR 436-030-0020(8). The record indicates that SAIF complied with those requirements, to the extent that it literally could after Wild died, by mailing the notice of closure to Wild's last known address, Wild's attorney, Wild's former employer, and the director.

We appreciate that a deceased worker's statutory beneficiaries must first become aware of their right to pursue the worker's compensation rights before they can act on that right. However, when SAIF issued the August 2006 notice of closure, no rule or statute that the parties have identified or that we have found required SAIF to identify Wild's statutory beneficiary and provide her with the notice of closure. While OAR 436-060-0017 did authorize statutory beneficiaries such as Wild's daughter to request a copy of the notice of closure,

---

[5] We recognize that ORS 656.268(5)(a)(C) requires the notice of closure to inform "[a]ny beneficiaries of death benefits to which they may be entitled pursuant to ORS 656.204 and 656.208." We do not understand that provision to require insurers to identify a deceased worker's statutory beneficiaries and to provide them with a copy of the notice. Rather, we understand it to require only that the insurer include in the notice a statement that beneficiaries may be entitled to receive statutorily authorized death benefits. SAIF complied with that requirement by including in the August 16, 2006, notice of closure the following statement: "The worker's beneficiaries are entitled to any unpaid compensation for temporary or permanent partial disability." It thus appears that the statutes and rules in effect in August 2006 reflect an assumption that, by requiring that the notice of closure be mailed to the worker and the worker's attorney, statutory beneficiaries would be informed of their rights through either the representative of the deceased worker's estate or the worker's former attorney.

nothing required insurers to provide notice of closure to beneficiaries independent of such a request.[6] Consequently, we conclude that the board erred in concluding that SAIF's August 2006 notice of closure was procedurally invalid under OAR 436-060-0017(7)(d).

Reversed and remanded.

---

[6] Effective January 1, 2010, the WCD has clarified:

"(1) If a worker is deceased, regardless of the cause of death, an insurer must address all future notices and correspondence to the worker's estate or qualified beneficiaries.

"(2) If a worker is deceased, regardless of the cause of death, an insurer must still provide a written notice of acceptance or denial of a claim and issue a Notice of Closure, when applicable, to the estate of the worker."

OAR 436-060-0012(1), (2). However, that rule was not in effect when SAIF issued the August 2006 notice of closure.